# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No. 12-262** |
| | ) | |
| **RICHARD A. RYDZE** | ) | |

## OPINION ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AS TO COUNTS 1, 2, 3, and 169

### I. Introduction

At the close of the government's case, defendant Richard A. Rydze ("defendant" or "Rydze") moved for judgment of acquittal pursuant to Federal Rule of Criminal procedure 29(a) with respect to counts 1 through 3, count 4, count 10, and counts 139, 141, 149, 150, and 169. Federal Rule of Criminal Procedure 29(a) provides:

> **(a) Before Submission to the Jury.** After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

Fed. R. Crim. P. 29(a).

### II. Standard of Review

In considering a Rule 29 motion, the court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" United States v. Boria, 592 F.3d 476, 480 (3d Cir. 2010) (quoting United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005)). The court must "examine the totality of the evidence, both direct and circumstantial," and "must credit all available inferences in favor of the government." United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003). The court "will only find the evidence insufficient when the prosecution's failure is clear." United States v. Mercado, 610 F.3d 841, 845 (3d Cir. 2010).

### III. Background

The court heard argument on defendant's Rule 29 motions on March 16, 2017. At the hearing the court denied defendant's motion with respect to counts 4 and 10. The court granted defendant's Rule 29 motion with respect to counts 139, 141, 149 and 152. Counsel were ordered to confer about count 169, after which the court would consider the motion, and the parties were given leave to file supplemental briefing with respect to counts 1, 2, and 3. The briefs are filed and the court will address defendant's Rule 29 motion with respect to the remaining counts.

### IV. Discussion

#### A. Counts 1, 2, and 3

Count 1 charges Rydze with conspiracy to distribute controlled substances – anabolic steroids, in violation of 21 U.S.C. § 846 & §§ 841(a)(1) & (b)(1). Counts 2 and 3 charge Rydze with distributing controlled substances - anabolic steroids, in violation of 21 U.S.C. § 841(a)(l) and 18 U.S.C. § 2.

To establish that Rydze is guilty of counts 1, 2, or 3, the government must establish for each count that the distribution of the controlled substances occurred "outside the scope of professional practice" and "not for a legitimate medical purpose." See United States v. Moore, 423 U.S. 122, 124, 139 (1975); United States v. Merrill, 513 F.3d 1293, 1306 (11th Cir. 2008); United States v. Maynard, 278 F. App'x 214, 218 (3d Cir. 2008); United States v. Feingold, 454 F.3d 1001, 1009-10 (9th Cir. 2006). The relevant provisions of the Code of Federal Regulations use the same language. A medical doctor may only prescribe controlled substances "for a legitimate medical purpose" when "acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). A DEA-registered practitioner is authorized to dispense a controlled

substance only "in the course of his/her professional practice." 21 C.F.R. § 1306.21(b). Finally, a "valid prescription" is defined as a prescription issued for a "legitimate medical purpose in the usual course of professional practice." 21 U.S.C. § 829 (e)(2)(A).

Rydze argues that whether his conduct was done outside the scope of professional practice and not for a legitimate medical purpose is to be determined by the Commonwealth of Pennsylvania's State Medical Board. He argues that because the government failed to call any witness to testify about the Pennsylvania State Medical Board's standards regarding prescribing anabolic steroids, the government is unable to meet its burden and therefore counts 1, 2, and 3 should be dismissed. In support of this position he relies on the Supreme Court's decision in Gonzales v. Oregon, 546 U.S. 243 (2006).

In Gonzalez v. Oregon, the Supreme Court analyzed an interpretive rule issued by the United States Attorney General stating that doctors who assist terminally ill patients in committing suicide pursuant to an Oregon law do so in violation of the Controlled Substances Act ("CSA"). Gonzales, 546 U.S. at 254. A large portion of the Gonzales opinion discussed the proper deference the Court should give to the Attorney General's interpretive rule. Id. at 255-69 (deciding that interpretive rule is not accorded substantial deference under Auer v. Robbins, 519 U.S. 452, 461–63 (1997), or Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–45 (1984), but is entitled to respect "only to the extent it has the 'power to persuade'" under Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

"Gonzales held only that the Attorney General lacked power under the CSA to define legitimate medical practices so as to directly oppose state law." United States v. Ahuja, Civ. Act. No. 3:14-CV-1558, 2016 WL 3962773, *4 (D. Conn. July 21, 2016) (citing 546 U.S. at 258

3

("[H]e is not authorized to make a rule declaring illegitimate a medical standard for care and treatment of patients that is specifically authorized under state law.")). In United States v. Feingold, the court of appeals similarly described Gonzales as "holding that the Attorney General lacked authority to declare illegitimate a medical standard for care ... that was specifically authorized under state law." Feingold, 454 F.3d 1001, 1011 n. 2 (9th Cir.2006). "Specifically, Gonzales concluded that the CSA's prescription requirement did not authorize the Attorney General's interpretive rule, which intentionally countered Oregon's physician-assisted suicide regime by declaring suicide not a legitimate medical purpose." Ahuja, 2016 WL 3962773, *4 (citing Gonzales, 546 U.S. at 253–54). "Gonzales did nothing to alter the reality that "knowingly distributing prescriptions outside the course of professional practice is a sufficient condition to convict a defendant under the criminal statutes relating to controlled substances." United States v. Volkman, 797 F.3d 377, 386 (6th Cir.) cert. denied, 136 S. Ct. 348 (2015) (quoting United States v. Kanner, 603 F.3d 530, 535 (8th Cir. 2010) (other citation omitted)).

There is no Attorney General interpretive rule at issue in this case, or a Commonwealth of Pennsylvania medical treatment regime (legislative or otherwise) that encompasses Rydze's charged conduct like Oregon's physician-assisted suicide regime encompassed the conduct of practicing physicians in Oregon. United States v. Lovern, 590 F.3d 1095, 1100 (10th Cir. 2009) ("Unlike Gonzales, we have before us no interpretive rule seeking to define a practice as lacking any legitimate medical purpose, let alone a rule that conflicts with a state's assessment of the legitimacy of that practice"). Rydze cites no legal support for the proposition that the government must produce evidence of the Pennsylvania State Medical Board's "position" or

4

'standards" about the prescription of anabolic steroids or testosterone in order to carry its burden of establishing that Rydze's conduct was outside the scope of professional practice and not for a legitimate medical purpose. Def. Br. Supp. ¶ 7 & ¶ 14.

In contrast, the Supreme Court implicitly approved a jury instruction referring to a national standard of care. Moore, 423 U.S. at 138-39. In Feingold, the court of appeals held that a district court "must ensure that the benchmark for criminal liability is the higher showing that the practitioner intentionally has distributed controlled substances for no legitimate medical purpose and outside the usual course of professional practice." Feingold, 454 F.3d at 1010. In Feingold, the court noted that its "holding is supported by the Supreme Court's decision in Moore, which implicitly approved an instruction that required the jury to find 'beyond a reasonable doubt that a physician, who knowingly or intentionally, did dispense or distribute [methadone] by prescription, did so other than in good faith for detoxification in the usual course of a professional practice and in accordance with a standard of medical practice generally recognized and accepted in the United States.'" Id. (quoting Moore, 423 U.S. at 138-39).

Similarly, in United States v. Merrill, the court of appeals rejected the defendant's argument that it was error for the district court not to give the jury the defendant's proffered "good faith" instruction, which focused on the physician's subjective intent. Merrill, 513 F.3d at 1306-07. The court found that the "appropriate focus is not on the subjective intent of the doctor, but rather it rests upon whether the physician prescribes medicine 'in accordance with a standard of medical practice *generally recognized and accepted in the United States*.'" Merrill, 513 F.3d at 1306 (quoting Moore, 423 U.S. at 139) (emphasis added).

5

In United States v. Norris, the court of appeals found that the district court "correctly rejected" the defendant's proposed charge "that a standard medical practice may be based on an entirely subjective standard" not objectively as the district court instructed. Norris, 780 F.2d 1207, 1209 (5th Cir. 1986). In Norris, the court of appeals affirmed the district court's charge describing it as "carefully modelled . . . after the Moore charge and properly directed the jury to consider: 1) Whether Dr. Norris prescribed the drugs for what he subjectively considered a legitimate medical purpose and 2) from an objective standpoint whether the drugs were dispensed in the usual course of a professional practice." Norris, 780 F.2d 1207, 1209 (5th Cir. 1986) (stating, "[t]he charge was a correct statement of the law").

Similarly, in United States v. Wexler, the court of appeals found that the district court did not err in declining defendant's "good intentions" instruction. Wexler, 522 F.3d 194, 205 (2nd Cir. 2008). In Norris, the court of appeals affirmed the district court's charge, which stated:

> [T]he Government must prove beyond a reasonable doubt that the defendant dispensed the drugs, or caused them to be dispensed, other than for a legitimate medical purpose, other than in good faith, and not in the usual course of medical practice.
>
> Good faith in this context means the honest exercise of best professional judgment as to a patient's medical needs. It means that the doctor acted in accord with what he should have reasonably believed to be proper medical practice.

Id.

The evidence produced by the government during its case in chief was sufficient for a rational trier of fact to find proof of guilt beyond a reasonable doubt with respect to counts 1, 2, and 3. In support of proving the charges of counts 1, 2, and 3, the government offered, in part, the testimony of James Hatzimbes, William Sadowski, Stephen Thomas, and Special Agent Jodene Weber, as well as expert testimony from Dr. Roberto Salvatori and Dr. Daniel Eichner.

The government also introduced medical records, prescriptions, and undercover recordings to support the charges, among other items. The government's evidence, viewing it in a light most favorable to the government, is sufficient for a reasonable jury to find beyond a reasonable doubt that Rydze's conduct with respect to counts 1, 2, and 3 was outside the usual course of professional practice and not for a legitimate medical purpose. For those reasons and because the government is not obligated to introduce evidence of the Pennsylvania State Medical Board's standards to establish Rydze's guilt with respect to counts 1, 2, and 3, his Rule 29 motion for dismissal will be DENIED.

### B. Count 169

Rydze is charged in count 169 with a single count of health care fraud through the unlawful acquiring and obtaining possession of Hydrocodone-Acetaminophen (commonly referred to as Vicodin ES) by misrepresentation, fraud, forgery, deception and subterfuge, in violation of 18 U.S.C. § 1347. Count 169 concerns an October 17, 2011 insurance claim for a prescription in the amount of $48.84, processed in the name of Clifford Zipf under his health insurance program, The IBM Program.

To find defendant guilty of health care fraud the government must establish that 1) Rydze knowingly devised or participated in a scheme to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses representations, or promises described therein, money and property owned by, and under the custody or control of, a health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services; 2) Rydze acted with the intent to defraud; and 3) the health care benefit program was a private or public plan or contract, affecting commerce, under which medical benefits, items, or

services were provided to any individual or an entity who was providing a medical benefit, item, or service for which payment may be made under a private plan or contract, affecting commerce, under which medical benefits, items, or services were provided to any individual.

The government introduced a customer history report from the Rite Aid legal department through a records custodian. Gov. Ex. 1266. This document indicates that Richard A. Rydze was the prescribing doctor for an October 17, 2011 Oxycodone prescription issued in the name of Clifford Zipf. The government also introduced William Zipf's testimony that he, William Zipf, filled the prescription identified in count 169 at Rite Aid on October 17, 2011, and that he used Clifford Zipf's health insurance to pay for the prescription. This evidence, along with the government's additional evidence not challenged by Rydze, is sufficient to establish beyond a reasonable doubt the charge of health care fraud in count 169.

Rydze does not dispute that a prescription issued to Clifford Zipf was filled on October 17, 2011 at Rite Aid, and that the Rite Aid document shows the prescribing doctor was Richard A. Rydze. Gov. Ex. 1266. Rydze also does not dispute that William Zipf caused the prescription to be filled and the prescription was paid for under Clifford Zipf's insurance policy. Rydze argues for dismissal of the count claiming that the government did not introduce the actual prescription itself and thus failed to establish that Rydze actually wrote the prescription.

The government introduced documentary evidence indicating that Richard A. Rydze was the prescribing doctor for the prescription in count 169. William Zipf testified that he filled a prescription for Clifford Zipf for Oxycontin from Rydze on October 17, 2011. Tr. William Zipf, Jan. 31, 2017, at 91. A rational trier of fact could find this evidence is sufficient to show beyond a reasonable doubt that Richard A. Rydze did write the October 17, 2011 prescription. The

8

evidence does not remove any possibility of innocence on the part of Rydze for Count 169, but on a motion to dismiss under Rule 29 the court views the evidence in favor of the government and only finds it insufficient when the prosecution's failure is clear. The government's evidence is sufficient to establish the elements of health care fraud with respect to count 169. Rydze's motion for acquittal with respect to count 169 will be DENIED.

### V. Conclusion

For the reasons set forth above, Rydze's motion for acquittal with respect to counts 1-3 and count 169 will be denied. An appropriate order will be entered.

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 12-262 |
| | ) |
| RICHARD A. RYDZE | ) |

## ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AS TO COUNTS 1, 2, 3, and 169

AND NOW, this 12th day of April, 2017, it is HEREBY ORDERED, ADJUDGED, and DECREED that for the reasons set forth in the accompanying opinion, defendant's Motion for Judgment of Acquittal with respect to Counts 1, 2, and 3 and count 169 (ECF No. 469) is hereby DENIED.

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge