# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 12-262 |
| | ) | |
| RICHARD A. RYDZE | ) | |

## OPINION ON DEFENDANT'S MOTION TO COMPEL DOCUMENTS

**I. Background**

A Motion to Require the Government to Produce Unredacted Reports Regarding Clark Sikorski was filed by defendant Richard A. Rydze ("defendant" or "Rydze"). ECF No. 492. Defendant moves to compel the government to turn over evidence of "the role of Sikorski as a government informant to the extent it may bear directly or indirectly on the government's case or Rydze's defense." Def. Br. Require Gov. to Prod. Unredacted Reports re Clark Sikorski, at 3, ECF No. 481. Specifically, defendant sought disclosure of the entire unredacted FBI reports relating to Sikorski. Defendant argued that he is entitled to this material at the time of trial as it relates to the issue whether Clark Sikorski ("Sikorski") acted in a coercive manner toward Rydze, and as it relates to an entrapment defense. Defendant expected that the evidence would show that Sikorski directly influenced William Zipf ("Zipf") during the course of his obtaining prescriptions from Rydze.

This dispute is not the first issue between the parties regarding Sikorski. On January 25, 2017, defendant filed a Motion to Compel Production of Documents Concerning Clark Sikorski requesting all potentially exculpatory or impeachment material referring or relating to Sikorski.

ECF No. 392. The motion was determined to be moot after the government provided certain material to defense counsel, some of which was redacted.

On February 14, 2017, defendant filed a Motion to Compel Disclosure of Whereabouts of Clark Sikorski and for *In Camera* Review of Redacted Agent Memoranda Regarding Sikorski. ECF No. 397. Prior to a hearing on the motion the court ordered the government to produce the unredacted material *in camera*. At the hearing on March 1, 2017, the court ordered one sentence of the redacted material to be unredacted and turned over to the defense.[1] Tr. Mot. to Compel, Mar. 1, 2017, at 2.

After argument on the motion to compel the whereabouts of Sikorski, the court denied the motion without prejudice, depending upon whether some evidence of coercion would be adduced during the trial. Id. at 13. At this point in the trial it was known that Sikorski acted as a confidential informant for the government. The government also confirmed that it was not calling Sikorski as a witness in its case.

The court permitted the defense to recall Zipf to testify about a letter Zipf wrote to defendant while he was in prison, which mentioned Sikorski, as well as to testify about any threats involving Sikorski, if evidence of such threats was introduced at trial. During Zipf's testimony on behalf of the government he testified that he never threatened Rydze, or conveyed any threats on behalf of Sikorski to Rydze, and that Rydze freely wrote prescriptions for him whenever he asked.

During Rydze's direct testimony he testified that Zipf had threatened Rydze that unless he continued to write prescriptions for Zipf, Sikorski would physically injure Rydze or his

---

[1] Following the hearing the court reviewed in camera additional material submitted by the government relating solely to William Zipf, not Clark Sikorski. The government voluntarily turned some of that material over to the defense.

children.[2] Rydze testified that it was fear of the threat relayed through Zipf that caused Rydze to write the prescriptions even though he knew there was no medical basis for the prescriptions. Evidence that Sikorski was physically big and was a "bad dude" was introduced at various times throughout the trial, including through the testimony of Rydze and Zipf.

Having introduced circumstantial evidence in support of the defense of coercion, the court indicated that it would grant a renewed motion to compel the government to disclose the whereabouts of Sikorski.

On cross-examination of Rydze, the government challenged the coercion theory in several ways, one of which was to question Rydze about his face-to-face interaction with Sikorski during several doctor-patient encounters the two had over the years. The gist of the government's cross-examination was to introduce evidence to the jury that despite Rydze's testimony that he feared he would be injured by Sikorski, Rydze nonetheless continued to treat Sikorski as a doctor.

To emphasize the government's theory that Rydze did not fear Sikorski it played an audio recording of one of Sikorski's medical appointments with Rydze. The conversation between Rydze and Sikorski conveyed a typical doctor-patient encounter indicating that the two men

---

[2] Rydze testified as follow:

> I told [Zipf] I wasn't going to do it [write additional prescriptions for the Zipf family members] and he told me that his friend . . . Clark Sikorski was in the car outside and Bill threatened me with Clark Sikorski hurting me.
> He told me that Clark – he has known that Clark carried a gun and he was a bad dude and had previously used the gun in various ways that I knew of, and he told me that Clark knew where I lived and the way I walked to work and he knew where my two sons lived and he is associated with this heavy duty motorcycle gang and you better give me these prescriptions.

Tr. Rydze Testimony, Mar. 22, 2017, 83.

knew each other and were friendly toward each other. The encounter was unremarkable and noncontentious.

After the audio was played Rydze agreed with the government that during the encounter he "spent quite a bit of time talking to" Sikorski. Tr. Rydze Testimony, Apr. 6, 2017, 85. The government asked Rydze, "in the middle of your appointment, you even socialized some with [Sikorski] a little bit?" Id. Mr. Rydze responded, "We did talk, yes. He is very manipulative." Id. The implication, apparently, being that despite the objectively friendly nature of the encounter revealed by the audio recording, Rydze did fear Sikorski, although Rydze never explicitly stated that he feared him during the encounter.

On redirect, Rydze's counsel appropriately attempted to counter the audio recording evidence by asking Rydze, "did you consider Mr. Sikorski in that interaction to be behaving at all in a threatening manner?" Tr. Rydze Testimony, Apr. 10, 2017, 113-14. Rydze's response was he *thought* Sikorski made threatening remarks about (not to) *another individual* (not Rydze).[3] A reasonable jury could find that Rydze's response indicates that he did not consider Sikorski's behavior to be threatening "in that interaction," since he chose to characterize

---

[3] The exchange was as follows:

> Q. You heard the interaction that you had with Mr. Sikorski. Did you consider Mr. Sikorski in that interaction to be behaving at all in a threatening manner?
> A. In that one interview?
> Q. Correct.
> A. On the tape?
> Q. Correct.
> A. I think he made some threatening remarks about – I don't want to say his name -- but another person in that tape, that why doesn't he just talk to me as if I could take care of him.

Tr. Rydze Testimony, Apr. 10, 2017, 113-14.

Sikorski's recounting of an event in his own life as indicating that Sikorski was threatening to someone else.

Counsel asked Rydze if "that interaction that you had, that you supposedly referenced, [was] consistent with your experience with Mr. Sikorski," to which Mr. Rydze testified, "[Sikorski] always had that air that he could take care of you in one minute, yes." Id. 114.

Defendant recalled Zipf as his own witness, in part, to question Zipf about threats related to Sikorski. On cross-examination Zipf directly contradicted Rydze's testimony about threats relating to Sikorski.

> Q. Mr. Zipf, was Clark Sikorski involved in you getting prescriptions from the defendant Richard Rydze as charged in the indictment in this case?
> A. No, he was not.
> Q. Did you ever tell Richard Rydze when you were asking for prescriptions in your name, Morgan's name, Clifford's name, your father's name that Clark was outside?
> A. No.
> Q. Did you ever tell the defendant that Clark had a gun?
> A. No.
> Q. Did you ever tell the defendant that if he didn't give you prescriptions, Clark knew where his sons lived?
> A. No. That doesn't make any sense.
> Q. Did you ever tell the defendant in order to get these Oxycodone or Oxycontin or Opana prescriptions, that Clark knew how he walked or how he walked to work?
> A. No.
> Q. Did you ever threaten Richard Rydze with the name of "Clark Sikorski" in order to get prescriptions for Oxycontin, Opana, or Oxycodone that are charged in this indictment?
> A. None whatsoever.
> Q. Did you have to threaten the defendant?
> A. No, I did not.

Tr. Zipf Testimony, Apr. 11, 2017, 20-21. The only evidence indicating that Rydze was coerced into writing prescriptions out of fear of Sikorski is Rydze's testimony itself. The jury will need to determine whether to credit the testimony of Rydze or Zipf.

## II. Discussion

### A. Production of Documents

Defendant argued that the government's cross-examination, particularly the playing of the audio recording of Sikorski's doctor appointment with Rydze, "opened the door" to the material he requested. Defendant also generally requested that the government produce *any* other exculpatory or material documents related to Sikorski.

If the audio recording opened the door to otherwise inadmissible evidence, to be relevant such evidence would have to rebut the government's evidence tending to show that Rydze did not fear Sikorski, or show that Sikorski was "manipulative" in such a way that would place another in fear or otherwise coerce them. At a minimum the material must consist of evidence that Rydze in fact feared Sikorski *during Rydze's own interactions* with Sikorski or otherwise show facts *known to Rydze* that set forth a basis on which Rydze claims he feared Sikorski.

The redacted material the government previously provided to the government, which defendant sought to have unredacted, was reviewed by the court prior to the March 1, 2017 hearing. At the hearing the court stated, "[t]he court has reviewed the unredacted versions of the reported interviews or reports relating to Mr. [Sikorski], and the court identified one sentence that should be unredacted and the government is going to unredact that and provide it to the defense. . . . The rest of it is either already known through other evidence that has been provided or inculpatory rather than exculpatory, so none of the other redactions would bear on this and, therefore nothing else will be ordered unredacted." Tr. Mot. to Compel, Mar. 1, 2017, at 2-3.

The court has again reviewed the material in light of the defendant's motion and the evidence introduced at trial to date. The court concludes that there is limited information, which reviewed broadly and interpreted in a light most favorable to defendant may possibly be considered exculpatory evidence contained within the documents and the court ordered that limited information be turned over to the defendant. The remainder of the material, however, has no relation to interactions between Sikorski and Rydze that are indicative of a coercive relationship or that support an entrapment defense. There is no evidence in the documents that Sikorski was involved in any of the transactions for illicit prescriptions Rydze wrote for Zipf. There is no evidence in the documents that Sikorski, either explicitly or implicitly, threatened Rydze in any manner.

The information provided by Sikorski to the government specifically mentioning Rydze is for the most part inculpatory and unrelated to Sikorski's relationship with Rydze. The court reviewed in camera the material and identified the limited material which was ordered to be turned over to defendant and in all other respects the defendant's motion was denied because none of that unredacted material was relevant to his coercion or entrapment defense.

With respect to other potential Sikorski material requested by defendant, the government remains under a continuing obligation to turn over any exculpatory material. On April 12, 2017, the government notified the court and counsel for the defendant that it found one document that might be deemed to be exculpatory within Sikorski material not previously reviewed by the court in camera. The government explained that this material was found in preparation for filing its opposition to defendant's motion to compel and in light of testimony Zipf offered when he was recalled by defendant. This document was turned over to defendant. The court has not ruled on

this material's relevancy or admissibility. To the extent this material contains prior bad act evidence offered to show propensity, it is subject to being prohibited as explained below. The material could have been used by defendant to challenge William Zipf's credibility had defendant chosen to recall him a second time.

On April 13, 2017, at sidebar with defense counsel present, the government provided five additional Sikorski reports to the court to review in camera to determine if the reports contained any exculpatory material that should be turned over to the defense. The court reviewed this material. The majority of the material is not relevant, exculpatory, or material. Some of the material is inculpatory.

The court identified limited material in those reports that is potentially exculpatory and the court ordered the government to produce that information to defendant in unredacted form. To the extent the conduct described in that material consists of evidence unknown to Rydze until revealed to him by the government it cannot be offered to show that Rydze feared Sikorski. In addition, it may be subject to being prohibited to the extent the material contains prior bad act evidence offered to show propensity as explained below.

Defendant argued that the Sikorski material might contain evidence to bolster his theory that Sikorski has *perhaps* threatened *unrelated* individuals in matters *unrelated* to the charges in this case. Defendant is clear that he wanted to show a past modus operandi of Sikorski using physical threats to coerce others. He argued that he intended to show "a view of Sikorski under which he follows the *modus operandi* of using 'muscle' to develop a relationship with potential targets and thereby draws them into criminal conduct for which he can receive credit, in the form of compensation (whether it be monetary or other benefits), from the government." Def. Br. 2.

8

There, however, was no evidence in the reports of Sikorski using "muscle" with potential targets related to this case.

Defendant's strategy is to introduce such prior bad act evidence in order to argue that it fits with Rydze's theory that he feared Sikorski and was unlawfully drawn into illegal conduct by a government agent. That evidence is inadmissible if the only reason defendant wants to use it is to show that Mr. Sikorski has a propensity to use physical threats and to use his position as a confidential informant for personal gain.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). The burden of identifying a proper purpose for prior bad act evidence of a witness rests with the proponent of the evidence. United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014). "First, the proponent must identify a proper 404(b) purpose for admission (such as knowledge or intent) that is 'at issue' in, or relevant to, the case." Id. Defendant submitted that the evidence is properly admitted to show that Rydze's testimony that he feared Sikorski has a basis in fact. As stated, however, Rydze is not able to base a fear of Sikorski on conduct he did not know about.

Assuming that this is a proper purpose, "the proponent must next explain how the evidence is relevant to that purpose." Id. At this stage the proponent must "actually demonstrate that the evidence 'prove[s] something other than propensity.'" Id. (quoting Mueller, Federal Evidence § 4:28, at 731). Defendant was unable to show that the evidence proves something other than propensity, as his explicit argument is that he intends to show a *modus operandi* of Sikorski using "muscle" against others to draw them into criminal conduct and

9

thereby personally profit. Def. Br. 2. Defendant's proffer was a straightforward prohibited propensity argument. He wanted to use the evidence to argue that because Sikorski has coerced others in the past in unrelated matters, it tends to show that he coerced Rydze through Zipf in this case. Defendant is prohibited from arguing that because Sikorski has (perhaps) threatened someone else in the past then it is more likely that Sikorski threatened Rydze in line with Rydze's testimony.

Assuming that evidence of Sikorski's prior bad acts of coercion not known to Rydze had a proper purpose and there were no "forbidden propensity inference," the court would not admit the evidence under Rule 403 because the probative value of the evidence is outweighed by the "the inherently prejudicial nature of [the] prior bad act evidence." Caldwell, 760 F.3d at 267.

**B. Entrapment Defense**

Finally, the material turned over to defendant, the redacted material reviewed by the court and not turned over to the defendant, as well as the evidence introduced at trial to date does not support defendant's entrapment defense with respect to Sikorski. At the March 1, 2017 hearing the court stated that it "didn't see anything in the way of entrapment in terms of any of the issues that were being presented or any kind of proffer being made by the defense at this stage." Tr. Mot. to Compel, Mar. 1, 2017, 4. At that time, the defense explained Rydze's theory of entrapment as "Sikorski, a paid government informant, is inducing the distribution of Oxycontin, he is causing a person under duress to engage in an illegal act." Id. at 5. At that time, the allegation of duress or coercion by Sikorski was not introduced into evidence. Since then Rydze's testimony has raised the issue whether Sikorski threatened him through Zipf in some manner to write the prescriptions. However, Rydze's testimony did not support a reasonable

inference that Sikorski was involved in the threat and Rydze did not offer any other evidence to show that Sikorski was involved in *entrapping* Rydze into writing illicit prescriptions.

> Entrapment is a relatively limited defense that may defeat a prosecution only when the Government's deception actually implants the criminal design in the mind of the defendant. The defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct.

United States v. Fedroff, 874 F.2d 178, 181 (3d Cir. 1989) (quotations and citations omitted).

Rydze did not adduce sufficient evidence for a reasonable jury to find it is more likely than not that the government inducement of the crime. To the extent that defendant presented an evidentiary basis in support of a defense it is solely to argue that he felt threatened by Sikorski through Zipf to write the prescriptions. There is no evidence supporting that Sikorski had any personal interaction with Rydze that was in any conceivable manner related to Rydze's writing illegal prescriptions in the name of Zipf family members. Zipf testified that Sikorski was not involved in any of the charged conduct. Significantly, Rydze himself did not testify that Sikorski had any interaction or contact with Rydze that touched upon the charged conduct[4], and was

---

[4] Rydze testified on cross-examination that he never saw Sikorski during any interaction with Zipf.

> Q. Clark was not in your office with Bill Zipf that day, correct?
> A. Not in the office, correct.
> Q. Did you see Clark outside of the office that morning when you claim Bill threatened you?
> A. I couldn't see the car, no.
> Q. Did you see Clark Sikorski that morning?
> A. No.
> Q. Did you see Clark -- strike that. Was Clark Sikorski with Bill Zipf on any of those mornings that you claim that Bill Zipf threatened you?
> A. I did not physically see Clark Sikorski.
> Q. And so that would be yes, he was not in the office?
> A. Yes.
> Q. So, at any time when Bill Zipf allegedly threatened you, Clark was never there, correct?
> A. Not with Bill, no.

Tr. Rydze Testimony, Apr. 6, 2017, 16.

11

unable to recount an implicit or explicit threat coming from Sikorski[5]. Tr. Rydze Testimony, Apr. 6, 2017, at16, 18. Rydze did not present sufficient evidence upon which to argue that the government, through Sikorski, induced Rydze to commit the offenses.

Rydze's argument that he was entrapped through Sikorski's role as an enforcer by way of threats relayed through Zipf only supports an allegation of coercion and duress, but does not support entrapment. There is no evidence that Zipf acted as a government informant in obtaining the illegal prescriptions, and defendant did not suggest that his entrapment defense is based on Zipf alone. The defense called Sikorski as a witness on April 18, 2017. His testimony was limited and did not support an inference that Sikorski had any role in allegedly inducing Rydze to write the Zipf prescriptions. Absent such evidence, Rydze will not be permitted to pursue an entrapment defense based upon Sikorski's conduct. Rydze did not present sufficient evidence for a reasonable jury to find it more likely than not that Sikorski was present for or instigated any of the conduct relating to the Zipf prescriptions. It would be a particularly novel theory of entrapment where a government agent induces illegal activity without any evidence an agent ever interacted with the defendant or instigated any of the illegal activity, and with no evidence that the government agent otherwise directed the illegal activity.

---

[5] Rydze testified that Sikorski never threatened him:

> Q. Did Clark Sikorski ever physically threaten you?
> A. Himself?
> Q. Correct.
> A. No.
> Q. Did he ever say to your face that he was going to cause physical harm to you?
> A. No.
> Q. Did he ever present any kind of weapon or have any sort of club or tool in his hands when he came to see you for his appointments?
> A. No.

Tr. Rydze Testimony, Apr. 6, 2017, 18.

Rydze also did not adduce sufficient evidence from whoch a reasonable jury could find it more likely than not that he lacked the predisposition to engage in the criminal conduct. To the contrary, Rydze testified that he had engaged in issuing unlawful prescriptions prior to the threat he testified kept him writing the Zipf family prescriptions.

### III. Conclusion

Defendant's motion to require the government to produce unredacted reports regarding Sikorski will be granted to the extent explained in this opinion and on the record will be denied in all other respects. Defendant's requested instruction for a jury instruction about an entrapment defense will be denied for the reasons set forth in this opinion.

An appropriate order will be entered.

/s/ Joy Flowers Conti  
Joy Flowers Conti  
Chief United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 12-262 |
| ) | |
| RICHARD A. RYDZE ) | |

## ORDER ON DEFENDANT'S MOTION TO COMPEL DOCUMENTS

AND NOW, this 25th day of April, 2017, it is HEREBY ORDERED, ADJUDGED, and DECREED that for the reasons set forth in the accompanying opinion, defendant's Motion Motion to Require the Government to Produce Unredacted Reports Regarding Clark Sikorski (ECF No. 492) is hereby DENIED in part, and GRANTED in part. The motion is granted as explained in the accompanying opinion and denied in all other respects. Defendant's request for a jury instruction about an entrapment defense will be denied for the reasons set forth in this accompanying opinion.

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge